UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ROBERT VAN NAME, JR., | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:14-CV-4 |
| | § | |
| EVELYN CASTRO, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION
## TO DISMISS CASE

This is a prisoner civil rights action brought pursuant to 42 U.S.C. § 1983.

Pursuant to the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996), any prisoner action brought under federal law must be dismissed if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A. Plaintiff's action is subject to screening regardless whether he prepays the entire filing fee or proceeds as a pauper. *Ruiz v. United States,* 160 F.3d 273, 274 (5th Cir. 1998) (per curiam); *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998) (per curiam). Plaintiff's *pro se* complaint must be read indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam), and his allegations must be accepted as true, unless they are clearly irrational or wholly incredible, *Denton v. Hernandez,* 504 U.S. 25, 32-33 (1992). Applying these standards, it is respectfully recommended that the Court dismiss Plaintiff's complaint for failure to state a claim

and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1), and that all pending motions be denied as moot.

## I. Jurisdiction.

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

## II. Procedural background and Plaintiff's allegations.

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID), and is currently confined at the McConnell Unit in Beeville, Texas. He filed this lawsuit on January 2, 2014, complaining that certain McConnell Unit officers and officials failed to properly investigate a physical assault against him by his cell-mate, and wrongfully punished Plaintiff for the incident, without holding the other offender accountable. (D.E. 1 at 5-6). Following the assault, Plaintiff was placed in pre-hearing detention (PHD) and after his release from PHD, Plaintiff discovered that certain items of his personal property, including his dentures, were missing. *Id.* at 5-6. Plaintiff named as defendants the following McConnell Unit employees: (1) Major Evelyn Castro; (2) Captain Consuela Benavides; (3) Assistant Warden Carol Monroe; (4) Assistant Warden Matt Barber; (5) Officer Jennifer L. Herbst; (6) C. Lawson, Region IV grievance investigator; (7) Sergeant Trina L. Velasquez; and (8) Property Officer Yolanda Y. Martin. *Id.*, pp.3-3a.

On January 17, 2014, Plaintiff filed a motion for a temporary restraining order (TRO), alleging that, in retaliation for filing this lawsuit, Defendants were attempting to house him with offenders who were known to be homosexual. (D.E. 8, p. 1).

A *Spears*[1] hearing was held on February 5, 2014. The following allegations were raised in Plaintiff's original complaint (D.E. 1), his TRO motion (D.E. 8), or at the hearing:

On December 20, 2012, Plaintiff was assigned a new cell-mate, Jonathan Reed. Plaintiff learned that Offender Reed had been on death-row for the past 30 years without a cell-mate, and so Plaintiff, along with other offenders in the area, tried to "teach" Offender Reed about the rules of living with a cell-mate. Reed had many bad habits, such as turning on the light in the middle of the night, coughing and spitting in the toilet, and flushing the toilet too many times. Plaintiff tried to overlook Offender Reed's infractions, but on January 1, 2012, Plaintiff woke up at 3:30 a.m. to find Offender Reed exposing himself. Plaintiff told him that behavior was unacceptable.

On January 2, 2012, Offender Reed exposed himself again to Plaintiff, and an argument ensued. Plaintiff was lying in his bunk, and Offender Reed came over to Plaintiff, punched him in the eye, and then pulled him off his bunk to the floor. Offender Reed began to stomp on Plaintiff, and in self-defense, Plaintiff pulled Offender Reed's shirt over his head and began hitting him. Plaintiff was finally able to convince Offender Reed to stop fighting, and Plaintiff went to the sink and began washing the blood off his face.

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985)*; see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a *Spears* hearing is incorporated into the pleadings).

After Plaintiff had washed, Officer Herbst arrived at the cell and she asked Offender Reed, who was bleeding, what happened. Offender Reed said he had hit his head on a table. Plaintiff told him to stop lying and told Officer Herbst that Offender Reed had attacked him. Officer Herbst asked Plaintiff if he was alright and he said "he was alright now." Officer Herbst took Offender Reed out of the cell, and shortly thereafter, Plaintiff was escorted to A-side turnout.

At the turnout, Lieutenant Gonzales interviewed Plaintiff. Lieutenant Gonzales told Plaintiff that Offender Reed refused to give a statement, and Lieutenant Gonzales indicated that he believed Plaintiff's version of the events. However, Major Castro found that, based on Offender Reed's injuries, that Plaintiff must have been the instigator, and she ordered Officer Herbst to write Plaintiff a disciplinary case for fighting and to escort him to PHD. Officer Herbst was also in charge of packing and inventorying both Plaintiff's and Offender Reed's property. Plaintiff's property was then taken to the property room.

Shortly after being placed in PHD, Officer Velasquez came to Plaintiff's cell to escort him to medical. Plaintiff picked up his jacket and Officer Velasquez stated that he could not bring his jacket because he had to remain in restraints. Plaintiff told her that he needed his jacket because it was cold outside and that once he got to medical, the restraints would have to be taken off because he needed x-rays. Officer Velasquez again told Plaintiff that he could not take his jacket, and in turn, Plaintiff refused to go to medical. Plaintiff testified that his injuries from the assault included a cut on the back of

his head, bruises and cuts on his leg, back, and shoulders, and pain in his neck and back, that he continues to experience.

In January 2012, a disciplinary hearing was held on the major case against Plaintiff for fighting. Captain Benavidez was the disciplinary hearing officer (DHO), and Plaintiff was in attendance at the hearing, represented by counsel substitute. Captain Benavidez refused to consider the statements of what other offenders had heard the night of the fight. Captain Benavidez found Plaintiff guilty of fighting, and as punishment, Plaintiff's classification was reduced from S3 to L2, and he was assigned to close custody for one year, limiting also his recreation and commissary privileges.

On January 11, 2012, Plaintiff received his personal property back. Plaintiff signed for his property, but he specifically noted on the Offender Property Inventory Form that the following items were missing: "Jalapeno Chips three; Coffee Black bag; One vitamin C-500; 4 cranberry juice; 2 Bud's best cookie; spoon and bowl plastic large; one mug plastic; [illegible] mesh bag; 1 deodorant; 1 shampoo; one jar of peanut butter." (*See* D.E. 1, p. 8). In addition, Plaintiff's dentures were missing.

Plaintiff filed grievances complaining that the January 2, 2012 assault was not properly investigated and he wanted charges filed against Offender Reed. Plaintiff also filed grievances challenging his disciplinary conviction for fighting and the loss of his personal property. (*See* D.E. 9 – 16).

For relief, Plaintiff requests that:

(1) Offenders placed in PHD be permitted to pack their own property and personally deliver it to the Property Room;

  (2) All offenders be screened so that Plaintiff is not housed with violent prisoners;

  (3) Defendants issue Plaintiff dentures to replace the ones that were 'intentionally and/or negligently lost" by them;

  (4) Actual damages in the amount of $573 and

  (5) Punitive damages of $50,000.

## III. Legal standard.

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted); *accord Biliski v. Harborth*, 55 F.3d 160, 162 (5th Cir. 1995) (per curiam). A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002). An action may be dismissed for failure to state a claim when it is clear that the plaintiff can prove no set of facts in support of his claim entitling him to relief. *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002) (citation omitted). The complaint must be liberally construed in favor of the plaintiff and the truth of all pleaded facts must be assumed. *Id*.

## IV. Discussion.

### A. Eleventh Amendment immunity.

Plaintiff has sued defendants in their official and individual capacities for monetary damages as well as for injunctive and declaratory relief. (See D.E. 1, p. 6).

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state…." Const. Amend. XI. This withdrawal of jurisdiction effectively confers immunity from suit. *P.R. Aqueduct and Sewer Auth. v. Metcalf & Eddy,* 506 U.S. 139, 144 (1993). When a plaintiff files suit against state officials in their official capacities, the lawsuit is effectively one against the State. *Hafer v. Melo,* 502 U.S. 21, 25 (1991). Indeed, a claim for monetary damages against a state official in his or her official capacity is "no different from a suit against the state itself," and consequently, is barred by the Eleventh Amendment.[2] *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989). *See also McKinley v. Abbott,* 643 F.3d 403, 406 (5th Cir.), *cert. denied*, 132 S. Ct. 825 (2011) ("Eleventh Amendment immunity extends to state officials who are sued in their official capacities because such a suit is actually one against the state itself."). Indeed, the Fifth Circuit has repeatedly held that the Eleventh Amendment bars claims for money damages against TDCJ officers in their official capacities. *See e.g., Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002).

To the extent Plaintiff is suing the named Defendants in their official capacities for money damages, those claims are barred by the Eleventh Amendment. *See Frew,* 540 U.S. at 437. Thus, dismissal of Plaintiff's claims for monetary damages against Defendants in their official capacities warrants dismissal.

---

[2] The Eleventh Amendment does not bar a plaintiff's claim for prospective injunctive relief. *Ex parte Young*, 209 U.S. 123, 159 (1908) (establishing exception to Eleventh Amendment immunity in cases where the alleged constitutional violation is caused by a state official's actions or refusal to act within the authority of his or her office).

### B. Plaintiff's claims against Warden Monroe, Warden Barber, and Cheryl Larson.

Plaintiff claims that Warden Monroe, Warden Barber, and Cheryl Larson conspired to conceal the acts of their subordinates by denying his grievances in which he complained about the assault investigation and challenged his disciplinary case.

For a prison official to be found liable under § 1983, the official must have been personally and directly involved in conduct causing an alleged deprivation of an inmate's constitutional rights or there must be a causal connection between the actions of the official and the constitutional violation sought to be redressed. *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995); *Lozano v. Smith,* 718 F.2d 756, 768 (5th Cir. 1983). "[Section] 1983 does not give a cause of action based on the conduct of subordinates. Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir.), *cert. denied,* 464 U.S. 897 (1983). Thus, supervisory officials cannot be held liable for the actions of subordinates on any theory of vicarious liability or *respondeat superior. Thompkins v. Belt,* 828 F.2d 298, 303-04 (5th Cir. 1987). A supervisory official may be held liable only if "(1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps,* 659 F.3d 440, 446 (5th Cir. 2011).

Plaintiff fails to allege any facts to demonstrate that Warden Monroe, Warden Barber, or Ms. Lawson were personally involved in a violation of his constitutional rights or implemented any unconstitutional policy. The Supreme Court has held that a prisoner

"has a liberty interest only in freedom from restraint ... imposing atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The Fifth Circuit has relied on *Sandin* to find that a prisoner has no federally protected liberty interest in having his prison grievances investigated or answered favorably. *Geiger v. Jowers,* 404 F.3d 371, 374 (5th Cir. 2005) (prisoner's allegation that he has a constitutionally protected right to have his grievance investigated and resolved is without merit because resolution of the grievance does not involve a "significant hardship ... in relation to the ordinary incidents of prison life."). *See also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996) ("[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause."); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by the state."). Plaintiff's complaints concerning how these individuals handled his grievances fails to state a cognizable claim.

Plaintiff also claims that these supervisory officials "conspired" to harm him. To prove a conspiracy claim cognizable under §1983, a prisoner-plaintiff is required to show that the defendants had "an agreement to commit an illegal act which resulted in the plaintiff's injury." *Hay v. City of Irving, Tex.*, 893 F.2d 796, 799 (5th Cir. 1990). The Fifth Circuit has stated that specific facts must be pled when a conspiracy is alleged. *Hale v. Harney*, 786 F.2d 688, 690 (5th Cir. 1986). To establish a cause of action based on conspiracy, a plaintiff must show that defendants agreed to commit a criminal act. *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982). Conclusory allegations of

conspiracy will not support a claim under § 1983. *Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir. 1992). In addition, to recover on a claim of conspiracy, the Fifth Circuit has held that there must be an actual deprivation of a constitutional right; a mere conspiracy to deprive is insufficient. *Villanueva v. McInnis*, 723 F.2d 414, 418 (5th Cir. 1984).

Accepting Plaintiff's allegations as true, he fails to demonstrate that Defendants acted together to deprive him of a constitutional right, that he was deprived of a constitutional right, or that Defendants agreed to commit a criminal act. Plaintiff has no federal constitutional right to have his grievances investigated or resolved in his favor, and his claims against these individuals are no more than conclusory. Moreover, because all of the Defendants are employees at the McConnell Unit, the alleged conspiracy does not involve an agreement between two or more people, such that there is no conspiracy. *See Hillard v. Ferguson*, 30 F.3d 649, 652-53 (5th Cir. 1994) (where the defendants are members of the same collective entity, the conspiracy does not meet the requirement of an agreement between two or more persons). Plaintiff offers no facts, other than his personal belief, that there was a conspiracy, and such allegations fail to state a claim. *McAfee v. 5th Circuit Judges*, 884 F.2d 221, 222 (5th Cir. 1989) (conclusory allegations lacking reference to material facts are not sufficient to state a claim of conspiracy under § 1983). Thus, Plaintiff fails to state cognizable claims against Warden Monroe, Warden Barber, or Ms. Lawson.

      **C.**     **Major Castro and Captain Benavides.**

Plaintiff claims that Major Castro wrongfully concluded that he was the instigator of the fight with Offender Reed, resulting in his being charged with a major disciplinary

case. He points out that Lieutenant Gonzales believed his account of the events, i.e. that Offender Reed was the aggressor, and that Major Castro did not conduct a proper investigation. He claims that Captain Benavides, in her role as DHO, violated his rights by finding him guilty of participating in a fight.

Plaintiff's due process claims against Major Castro and Captain Benavides fail to state cognizable constitutional violations because he has no right to a favorable disciplinary decision. Indeed, in the context of state prison, there is no federal constitutional right to be free from false disciplinary charges. *Espinoza v. Benoit*, 108 Fed. Appx. 869, 871 (5th Cir. 2004) (noting that if only "some evidence" is required to support a disciplinary *conviction*, then clearly investigators are not required to obtain a higher level of proof to merely *initiate* a disciplinary charge). In fact, a prison official is not constitutionally prohibited from bringing even a patently false disciplinary charge unsupported by any evidence. *Palmisano v. Bureau of Prisons*, 258 Fed. Appx. 646, 648 (5th Cir. 2007) (noting that a prisoner's assertion that defendants brought false charges against him does not alone implicate his constitutional rights).

At the hearing, Plaintiff admitted that he was represented by counsel substitute and was allowed to testify. Indeed, he told Major Castro and Captain Benavides that Lieutenant Gonzales found his version of events more credible, and pointed out that Offender Reed had been on death-row, whereas Plaintiff is "easy going" and "does not like to cause trouble." However, the fact that different prison officials might reach different conclusions on a certain set of facts, with no eyewitnesses, is not surprising, and

certainly does not result in a constitutional violation. Plaintiff fails to state cognizable claims against Major Castro or Captain Benavidez.

### D. Property claim.

Plaintiff complains that items of his personal property were lost, misplaced or stolen. He believes that Officer Herbst mistakenly packed some of his property with Offender Reed's possessions, and vice-versa. Plaintiff filed numerous requests with Property Officer Martin concerning his property, but to date, it has not been returned.

The Fourteenth Amendment of the Constitution provides that no State shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV § 1. The Supreme Court has held that a random and unauthorized intentional deprivation of property does not violate the Due Process Clause if the State provides an adequate post-deprivation remedy. *See Hudson v. Palmer*, 468 U.S. 517, 534-35 (1984); *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996). A claimant must either take advantage of the available remedies or show that the available remedies are inadequate. *Hudson*, 468 U.S. at 534-35.

Texas law allows recovery of monetary damages for the loss of property that has been taken without authorization. *See Murphy v. Collins*, 26 F.3d 541, 543 (5th Cir. 1994) (in Texas, the tort of conversion fulfills this requirement); *see also Beam v. Voss*, 568 S.W.2d 413, 420-21 (Tex. Civ. App.– San Antonio 1978, no writ) (conversion is the unauthorized and unlawful assumption and exercise of dominion and control over the personal property of another, to the exclusion of, or inconsistent with the owner's rights).

In addition, state law specifically provides that inmates may recover up to $500.00 on a claim that the TDCJ lost or damaged personal property. Tex. Gov't Code § 501.007.

Because Texas law provides an adequate post-deprivation remedy, Plaintiff's loss of his commissary items and dentures does not state a violation of the Due Process Clause. *See Hudson*, 468 U.S. at 536 (noting that even when a prisoner's property was intentionally destroyed, such destruction did not violate the Fourteenth Amendment because state law provided the prisoner with an adequate post-deprivation remedy). To the extent that Plaintiff claims the loss of property was only the result of negligence, he has no claim for violation of a constitutionally protected right. *Daniels v. Williams*, 474 U.S. 327, 328 (1986).

A prisoner-plaintiff may bring suit in federal court for property loss only if relief is denied in state court on grounds other than the merits of his claim. *See Thompson v. Steele*, 709 F.2d 381, 383 n.3 (5th Cir. 1983). The burden is on the inmate to show that the post-deprivation remedy is inadequate. *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996). Plaintiff testified that he has not filed suit in state court pursuant to § 501.007 or for conversion. Because Plaintiff has not pursued his state court remedies he cannot allege that the post-deprivation remedy available to him is inadequate. As such, Plaintiff's claim for property loss fails to state a cognizable constitutional claim.

### E. Medical claims.

Plaintiff claims that, following the assault by Offender Reed, Officer Velasquez refused to take him to medical for x-rays. Plaintiff admitted that he refused to go to medical unless he could put on his jacket, and in turn, Officer Velasquez refused to take

off the restraints to allow Plaintiff to put on his jacket. The stalemate ended with Plaintiff not going to medical.

To state an Eighth Amendment claim for denial of medical care, a prisoner-plaintiff must establish that the defendant was aware of a serious medical need and then ignored that need. *Farmer v. Brennan,* 511 U.S. 825, 828 (1994). Although Plaintiff claims that he was assaulted by Offender Reed, he admits that he was able to bring an end to the assault, and was then able to get up and wash his face. He was able to ambulate to the A-side turnaround and to ambulate to PHD. He was able to attend his disciplinary hearing and to inventory his property on January 11, 2012. He was able to file numerous grievances shortly after the attack, yet he did not file a sick call request or ask to be taken to medical while in PHD. Indeed, immediately after the incident, Plaintiff was able to disagree with Officer Velasquez and to turn down medical attention because she did not agree to his terms.

Moreover, Plaintiff testified that, following the fight with Offender Reed, he went to the sink and washed off the blood and cleaned himself up. Although he may have had cuts and bruises, there is no allegation that he was in such obvious distress that Officer Velasquez knew or should have known that he was suffering from a serious medical need. To the contrary, Plaintiff felt well enough to demand his jacket and to refuse medical treatment simply because Officer Velasquez was not willing to take off his restraints. There is no Eighth Amendment violation.

**F.    TRO.**

Plaintiff has filed a motion for temporary restraining order to enjoin Defendants from housing him with known homosexuals.  He claims that he has been sexually and violently attacked three times during his 21 years in prison.  He does not suggest, however, that the inmates who attacked him were homosexuals.

A party seeking a TRO/preliminary injunction must establish: (1) a substantial likelihood of success on the merits; (2) a substantial threat that irreparable harm exists; (3) the threatened injury to the movant outweighs the threatened harm to the defendants; and (4) the granting of the preliminary injunction will not disserve the public interest). *See Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*; 335 F.3d 357, 363 (5th Cir. 2003).

Plaintiff has failed to establish a likelihood of success on the merits as it is recommended that the instant action be dismissed.  As to irreparable harm, although Plaintiff claims he has been assaulted in the TDCJ numerous times, he denied that he is a homosexual or has any particular feminine characteristics.  He is 6' tall, weighs 165 pounds, and takes care of himself physically.   The fact that he has been assaulted in the past does not, without more, suggest future irreparable harm.

As to the last two factors, it is well established that the federal courts are loath to interfere in the day-to-day operations of prisons, finding prison administrators to be in the best position to address housing and classification, within the legitimate penological considerations of safety and security.  *See Olim v. Wakinekona,* 461 U.S. 238, 245 (1983).  There are multiple examples of anti-homosexual violence in our society,

demonstrating that homosexuals are subject to bias-motivated attacks from heterosexuals. *See Dickerson v. United States,* 530 U.S. 428, 443 (noting that aspects of national culture are relevant in constitutional analysis). The courts have acknowledged that housing homosexuals with heterosexuals might cause friction between inmates that could potentially lead to violence. *See e.g. Farmer,* 511 U.S. at 830 (noting that prison administrators may consider inmate's sexual identity in making housing assignments); *Veney v. Wyche,* 293 F.3d 726, 732-33 (4th Cir. 2002). Studies have shown that inmates known to be homosexuals are at a greater risk of being sexually attacked in prison. *See* Robert Dumond, *Inmate Sexual Assault: The Plague that Persists,* 80 Prison J. 407, 408 (2000) (listing homosexuals as a group that appears to be more vulnerable to sexual victimization). In prison environments, where inmates live in close quarters and their movements are restricted, prison officials may conclude that more proactive measures are required ***to protect homosexuals*** from bias-motivated attacks.

Plaintiff's request is contrary to society's current morals. He purports to seek "protection" from homosexuals as a class, though he offers no evidence to suggest that he is preyed upon by homosexuals. Plaintiff's homosexual-bias does not raise a constitutional claim nor merit further analysis.

## V. Recommendation.

Plaintiff has failed to state cognizable constitutional claims against the named defendants herein. Accordingly, it is respectfully recommended that this case be

dismissed with prejudice for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1), and that his motion for a temporary restraining order (D.E. 8) be denied on the merits and as moot.

Respectfully submitted this 6th day of March, 2014.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).